NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| FRED DEFAZIO, | : | |
| | : | **Civil Action No. 20-375 (SRC)** |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| WELLS FARGO BANK NATIONAL ASSOCIATION, et al., | : | |
| | : | |
| Defendants. | : | |

**CHESLER**, District Judge

This matter comes before the Court on two motions to dismiss the Complaint: Defendant Wells Fargo Bank N.A.'s ("Wells Fargo") motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and Defendants Stephen S. Bird and Law Offices of Stephen S. Bird, LLC's (the "Bird Defendants") motion to dismiss for lack of in personam jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and, in the alternative, for failure to state a claim pursuant to Rule 12(b)(6). Plaintiff Fred DeFazio ("Plaintiff" or "DeFazio") has opposed both motions. The Court has considered the papers filed by the parties. It proceeds to rule on the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons expressed below, the Court will grant both motions to dismiss.

**I.     BACKGROUND**

This action arises out of the attempt by Plaintiff DeFazio, a New Jersey resident, to purchase property in South Carolina. According to the Complaint, some unknown third party

defrauded Plaintiff by gaining unauthorized access to the computer systems of the Bird Defendants and causing DeFazio to wire funds to the fraudster's Wells Fargo bank account instead of the Bird Defendants' escrow account. Plaintiff brings this action seeking to hold Wells Fargo and the Bird Defendants liable for their alleged role in allowing the fraud to be committed.

The following summary of the facts is drawn from the allegations of the Complaint, the documents referenced therein, and, where appropriate, sources outside of the Complaint insofar as the information concerns the question of personal jurisdiction.

In January 2019, DeFazio agreed to purchase real property located at 640 Flatwater Drive in Bluffton, South Carolina (the "Property") from non-party HL Development, LLC for $224,910.00. Upon the suggestion of HL Development, DeFazio contacted attorney Bird, who maintains a law office in Bluffton, to represent him in the real estate transaction and to act on DeFazio's behalf at the closing. In connection with retaining the Bird Defendants, DeFazio advised that he was a New Jersey resident. According to the Complaint, Bird assured him his firm regularly represented out-of-state clients in property closings. The Bird Defendants also advised DeFazio they would primarily communicate with him via email.

Over the next few weeks, DeFazio exchanged various emails with attorney Bird and two employees of the Bird law firm, namely Karin Cimino ("Cimino") and Krista Shooltz ("Shooltz"). To highlight the most important: On January 17, 2019, Cimino sent DeFazio an email confirming receipt of DeFazio's $25,000 deposit in connection with the Property purchase and advising that "all funds for closings must be in the form of a wire." (Compl. ¶ 7.) This email, copied to Bird and Shooltz, bore a sender's email address of "kcimino@sbirdlaw.com." (Id.) On January 25, 2019, Cimino again emailed DeFazio to advise that the closing would take place on

January 31, 2019 and to provide various documents which included wire instructions in connection with the closing. In particular, the email instructed DeFazio "to wire the sum of $203,000.19 to the account titled 'Law Office of Stephen S. Bird, LLC Escrow Account' as designated in the wire instructions." (Id. ¶ 9; see also Carbon Cert. Ex. C.). Those referenced instructions were set forth in a document bearing the Bird law firm letter head. The document specified the payee account information, including the name of the receiving bank (Synovus Bank), routing and account number, and beneficiary (Law Office of Stephen S. Bird, LLC Escrow Account). The wire instructions also cautioned as follows: "Due to recent warnings from the South Carolina Bar Association, we ask that before you wire to Law Office of Stephen Bird, LLC, you call our office at (843) 815-3900 to verify the account information." (Carbon Cert. Ex. B.). Cimino's January 25 email reiterated the instruction to "be sure to call our office to verify the wire instructions prior to sending the money." (Id. Ex. C.) That same day, DeFazio emailed the Bird Defendants with questions about certain charges set forth on the Settlement Statement he had received. On January 28, 2019, Cimino responded, at approximately 10:12 a.m.

A few hours later, on January 28 at 2:09 p.m., DeFazio received another email which appeared to be from Cimino, as it bore a sending address of kcimino@sbirdlaw.com. This email provided DeFazio different wire instructions than had previously been supplied. The new instructions, also printed on the Bird law firm letterhead, directed DeFazio to wire the funds to an account bearing the name "Law Office of Stephen S. Bird, LLC Escrow Account" but maintained at Wells Fargo under a different account number than set forth in the previous instructions. (For simplicity, the Court will hereinafter refer to this bank account as the "Wells Fargo Account".) Over the next few days, additional emails were exchanged between DeFazio

3

and "kcimino@sbirdlaw.com" confirming the new wiring instructions and providing updates about the wire of funds. Finally, on January 30, 2019, DeFazio sent an email to Cimino confirming that the wire of $203,000.19 was "done" as instructed in the January 28, 2019 2:09 p.m. email from the Bird Defendants. A reply email from kcimino@sbirdlaw.com advised "Great thanks." (Compl. ¶ 13.)

However, the Bird Defendants did not receive the funds. On February 4, 2019, four days after the scheduled closing date, attorney Bird "contacted Mr. DeFazio by telephone and advised him that the funds had not been received and that the Bird Defendants did not have an account at Wells Fargo." (Id. ¶ 14.) Upon realizing that he had sent the funds to an unintended payee, DeFazio contacted both his own bank, where the payor account was maintained, and Wells Fargo. DeFazio advised the banks that a fraud had been committed. According to the Complaint, Wells Fargo "acknowledged the receipt of funds into the account to which the funds were wired but would not provide any other information and apparently took no action to freeze the account into which the funds had been wired." (Id.) With the assistance of his bank, DeFazio was able to locate and recover $126,200.98 of the funds he had been misled to wire to the Wells Fargo Account.

DeFazio filed this lawsuit in the Superior Court of New Jersey on or about November 27, 2019. Defendant Wells Fargo removed the action, with the Bird Defendants' consent, on January 10, 2020. Wells Fargo is a citizen of South Dakota, and the Bird Defendants are citizens of South Carolina. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

## II. WELLS FARGO'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

The Complaint pleads for relief from Wells Fargo under the following four causes of action: negligence, gross negligence and recklessness; aiding and abetting fraud and conversion; conversion; negligent supervision/respondeat superior. Wells Fargo moves to dismiss these claims for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). In turn, the Court will evaluate each of the claims against Wells Fargo according to the well-established legal standard for evaluating whether a claim has been sufficiently pleaded under the Federal Rules of Civil Procedure.

To meet the pleading requirements of Rule 8(a), a complaint must contain "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Rule 9(b), which applies to claims sounding in fraud, sets a heightened requirement: the complaint must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Third Circuit has held that to satisfy Rule 9(b)'s stringent standard, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007). On a Rule 12(b)(6) motion, the Court must accept as true the well-pleaded facts of a complaint and any reasonable inference that may be drawn from those facts but need not credit conclusory

statements couched as factual allegations. Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In the First Count of the Complaint, Plaintiff alleges that Wells Fargo was negligent "in opening the Fraudulent Wells Fargo Account, allowing transfers of the proceeds from the Wire and possible other wires out of the Fraudulent Wells Fargo Account and failing to prevent further transfers of funds out of the Wells Fargo Account after being made aware of facts putting Wells Fargo on notice that the Fraudulent Wells Fargo Account was being utilized to facilitate fraud and steal money . . .." (Compl., First Count, ¶ 3.) Wells Fargo raises two grounds for dismissal of this claim. One, it argues that insofar as the negligence claim relates to wire transfers, the claim is barred by Article 4A of the Uniform Commercial Code ("UCC") as adopted by New Jersey statute as N.J.S.A. 12:4A-101, et seq. Two, it argues that the negligence claim must be dismissed because Wells Fargo owed no duty to Plaintiff, a non-customer of the bank, regarding the opening and/or monitoring of the Account. The Court agrees with both arguments.

Article 4A of the UCC applies to the subject of electronic funds transfers, broadly defined as "the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order." ADS Assoc. Group, Inc. v. Oritani Sav. Bank, 219 N.J. 496, 511-12 (2014) (quoting N.J.S.A. 12A:4A-104(1)). The New Jersey Supreme Court has held that, as made clear by Official Comment to the statute, "Article 4A comprehensively governs the rights and remedies of parties affected by funds transfers." Id. at 518. Comment 1 expressly provides as follows:

> Funds transfers involve competing interests . . . The rules that emerged [from the statutory drafting] represent a careful and delicate balancing of those interests and are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article.

N.J.S.A. 12A:4A-102 cmt. 1. Guided by the New Jersey Legislature's comment and the plain language of Article 4A's provisions dealing with the issuance and acceptance of payment orders, the Supreme Court of New Jersey held in ADS that Article 4A preempts a common law negligence claim that "arises from a setting directly addressed by Article 4A." ADS, 219 N.J. at 519. Because the ADS plaintiff's negligence claim challenged a funds transfer, from one account at a bank to another at the same bank, the Court found that the claim fell within the purview of Article 4A, which therefore provided the exclusive remedy for the dispute. Id. The Supreme Court rejected the ADS plaintiff's common law negligence claim as an improper expansion of the statute's remedies, reasoning that permitting a non-customer to proceed with a cause of action for unauthorized transfers would upset the delicate balance of competing interests struck by the statute. Id. at 520.

The New Jersey Supreme Court's decision in ADS is controlling. Following the reasoning and holding of that case, this Court concludes that DeFazio's negligence claims against Wells Fargo are likewise barred by Article 4A, insofar as they are predicated on the bank's allegedly improper acceptance of funds transferred to the Account and/or the bank's transfer of funds out of the Account. Matters concerning funds transfers into and out of banking institutions are covered by Article 4A. Indeed, Subsection 207(2) specifically pertains to

7

situations in which the originator of a funds transfer sends the receiving bank a payment order in which the beneficiary is described by name and by an identifying account number but the two pieces of information do not match, that is, the payment order contains conflicting information as to identification of the beneficiary. See N.J.S.A. 12A:4A-207(b). Under those circumstances, the statute provides that the bank "may rely on the number as the proper identification of the beneficiary of the order." Id. With regard to transfers out of account, Section 404 establishes a bank's obligation to make funds available to a payment order beneficiary when the beneficiary bank accepts the order, requiring a bank to pay the amount of the order upon acceptance. N.J.S.A. 12A:4A-404. Article 4A directly addresses the funds transfer actions on which Plaintiff's negligence claim is based. Accordingly, it precludes Plaintiff's claim that Wells Fargo acted with negligence or gross negligence in accepting the funds Plaintiff erroneously transferred into the Wells Fargo Account, in transferring funds out of the Wells Fargo Account and in otherwise failing to prevent transfers from the Wells Fargo Account. ADS, 219 N.J. at 519.

     Plaintiff's negligence claim is not, however, solely based on allegations involving wire transfers. The Complaint also alleges that Plaintiff was harmed by Well Fargo's lack of care in the management and maintenance of the accounts. It avers, in particular that the bank was negligent in opening the Wells Fargo Account and in failing to ensure that the Wells Fargo Account "was opened for legitimate purposes and not used in a manner to facilitate frauds and

8

steal money." (Compl., First Count, ¶ 2.)[1] Plaintiff correctly notes this aspect of his negligence claim is not barred by Article 4A, as only claims inconsistent with Article 4A are displaced by the statute. ADS, 219 N.J. at 519-20; see also Remtek Svcs., Inc. v. Wells Fargo Bank, N.A., No. 19-12790, 2020 WL 241332, at *4 (D.N.J. Jan. 16, 2020) (holding that Article 4A did not bar the plaintiff's claim "asserting that Wells Fargo was negligent in allowing the fraudsters to open an account in the first place."); Eisenberg v. Wachovia Bank, N.A., 301 F.3d 220, 223-24 (4th Cir. 2002) (holding that the plaintiff's negligence claims were not inconsistent with UCC Article 4A insofar as they challenged the opening and management of the bank account at issue in that case).

Among other arguments raised in the motion to dismiss, Wells Fargo contends that there is no duty owed to Plaintiff relating to the manner in which the account was opened. It argues that the opening of bank accounts is governed by the Bank Secrecy Act of 1970, which does not "authorize a private cause of action against a financial institution or its employees." James v.

---

[1] The Complaint has also alleged negligence for failure to prevent funds from being transferred out of the Wells Fargo Account after Wells Fargo was "made aware of facts putting [it] on notice that the Fraudulent Wells Fargo Account was being utilized to facilitate fraud and steal money." (Compl., First Count, ¶ 3.) Wells Fargo, in its moving brief, treats this allegation as sounding in negligence for failure to monitor, but Plaintiff expressly rejects this as an improper interpretation of its allegation. Indeed, Plaintiff states in his opposition brief that "[t]his is not an allegation of a duty to monitor. It is an allegation that the knowledge of Wells Fargo essentially made it complicit in the fraud and nothing in law allows a bank to sit idly by when it is aware that crimes are being committed." (Pl. Br. at 10.) Plaintiff clarifies that this aspect of the claim goes to the allegation that in preventing transfer after being made aware of facts that the Wells Fargo Account was being utilized to commit a fraud, "Wells Fargo aided, abetted and facilitate the fraudulent scheme of the holder of the Account in a manner that was negligent . . .." (Id.) Given that Plaintiff has expressly disclaimed a failure to monitor claim, and given the Complaint's conflation of negligence and fraud theories of wrongdoing with regard to "after-notice" transfers from the Wells Fargo account, the Court will analyze the claim for failure to prevent transfer of funds in furtherance of a fraudulent scheme as part of the aiding and abetting fraud claim pleaded in the Third Count.

9

Heritage Valley Fed. Credit Union, 197 F. App'x 102, 106 (3d Cir. 2006). Wells Fargo further argues that it is generally recognized that, absent special circumstances, banks do not owe non-customers a duty to exercise reasonable care or to protect them from the intentional torts of their customers. Brunson v. Affinity Fed. Credit Union, 199 N.J. 381, 400 (2009) ("in the unique context of whether a bank owes a duty to a non-customer, it is clear that 'absent a special relationship, courts will typically bar claims of non-customers against banks.'") (quoting City Check Cashing, Inc. v. Mfrs. Hanover Trust Co., 166 N.J. 49, 60 (2001)); see also Lerner v. Fleet Bank, N.A., 459 F.3d 273, 286 (2d Cir. 2006) ("[b]anks do not owe non-customers a duty to protect them from the intentional torts of their customers."; Eisenberg, 301 F.3d at 225-26 (noting that courts of numerous jurisdictions, including New Jersey, have held that a bank does not owe a duty of care to a non-customer, and holding that the plaintiff therefore had no negligence claim involving the opening of a fraudulent bank account).

In response, Plaintiff maintains that Wells Fargo's argument is misplaced because the Complaint does not seek relief under the Bank Secrecy Act. What Plaintiff does not do is cite to any binding legal authority to rebut Wells Fargo's argument, supported by caselaw, that it did not owe Plaintiff a duty of care with regard to the opening of an account for some third party or, for that matter, with regard to its management of the account. It is axiomatic that a negligence claim requires "a duty of care owed by the defendant to the plaintiff." Robinson v. Vivirito, 217 N.J. 199, 208 (2014). Moreover, "the issues of whether defendant owes a legal duty to another and the scope of that duty are generally questions of law for the court to decide." Id. Here, the Complaint fails to plead facts establishing that Wells Fargo owed non-customer DeFazio a duty

10

of care under New Jersey law. The lack of this essential element prevents DeFazio's negligence claim against Wells Fargo from proceeding.

Accordingly, the Court will dismiss the negligence claim asserted in the First Count of the Complaint in its entirety. It will not, moreover, grant leave to amend so that Plaintiff may plead for relief under Article 4A or allege additional facts in support of his negligence claim, as such repleading would be futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (holding that upon granting a defendant's motion to dismiss a deficient complaint, a district court should grant the plaintiff leave to amend within a set period of time, unless amendment of the complaint would be inequitable or futile). Plaintiff is indisputably not a customer of Wells Fargo, as defined by Article 4A, and thus cannot assert the statutory cause of action. See 12A:4A-105(1)(c) (defining "customer" as one "having an account with a bank"); ADS, 219 N.J. at 519 (holding that the cause of action recognized by Article 4A to address unauthorized bank transfers is available only to a bank's customers). Moreover, there is no indication that he and Wells Fargo have the "special relationship" contemplated by the New Jersey Supreme Court that might give rise to a duty of care. See ADS, 219 N.J. at 517-18 (discussing City Check Cashing, 166 N.J. at 62, and noting that, although it rejected the non-customer plaintiff's common law claim against a bank, the Court recognized that a "special relationship" may be "created by agreement, undertaking, or contract" giving rise to a duty of care owed by a bank to a non-customer).

The Second Count of the Complaint pleads a claim against Wells Fargo for aiding and abetting an alleged fraud committed against Plaintiff. To establish liability for aiding and abetting fraud, a plaintiff must establish the underlying wrongdoing (i.e., the fraud committed by

11

another party), that the defendant was aware of his role in the tortious activity at the time it was committed, and that the defendant "knowingly and substantially assist[ed] the principal violation." State Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, 387 N.J. Super. 469, 483 (App. Div. 2006) (quoting Tarr v. Ciasulli, 181 N.J 70, 84 (2004) and finding that the New Jersey Supreme Court's adoption of the Restatement definition of aiding and abetting liability in the context of another tort applies with equal force to a claim for aiding and abetting a fraud); see also Prudential Ins. Co. of Am. v. Credit Suisse Sec. (USA) LLC, No. 12-7242, 2013 WL 5467093, at *19 (D.N.J. Sept. 30, 2013) (applying the elements recognized by McCormac v. Qwest to a claim for aiding and abetting fraud). The Complaint is completely devoid of facts which, if true, would establish that Wells Fargo knowingly and substantially assisted a third party's fraud on Plaintiff, as described in the Complaint. It merely alleges that Wells Fargo "aided, abetted and facilitated the fraudulent scheme of one or more of the Doe Defendants" by opening the Account, accepting wires into the Account, allowing funds to be transferred out of the Account, and failing to prevent further transfers after being put on notice of the fraud. (Compl., Second Count, ¶ 3.) As to the latter point, regarding Wells Fargo's knowledge that it was participating in or facilitating a fraud, the Complaint is particularly lacking in factual allegations. It states as follows: "Wells Fargo either had actual knowledge, is charged with actual knowledge, was on notice and/or chose to be willfully ignorant of the fact that the Fraudulent Wells Fargo Account was being utilized to facilitate frauds and steal money and, despite being made aware of these facts, refused to take steps to prevent damage to Mr. DeFazio and others similarly situated." (Id.) This conclusory allegation is precisely the type of "unadorned, the-defendant-unlawfully-harmed-me accusation" the Supreme Court has held does

12

not suffice to withstand a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 678. As Wells Fargo points out, the Complaint fails to allege what was communicated to Wells Fargo, when and how the communication took place, and who was involved in the communication. In short, the claim for aiding and abetting fraud meets neither the plausibility standard of Rule 8 nor the heightened standard Rule 9(b) applicable to claims sounding in fraud.[2]

Plaintiff, in his opposition, gives no indication that he could allege particular facts showing that Wells Fargo knew it was assisting the alleged fraud at the time the violation was committed. Instead, he argues that Wells Fargo has failed to "produce a Certification from anyone nor has there been any discovery of what Wells Fargo knew and when it knew it with respect to the concededly fraudulent nature or [sic] the Account and transactions processed through the Account." (Pl. Br. at 10.) This approach reverses the applicable burdens of proof. The burden is on the Plaintiff to plead facts showing that Wells Fargo is liable for aiding and abetting the fraud, not on Wells Fargo to establish that it did not have the requisite knowledge.

Next, in the Third Count, Plaintiff asserts a claim for conversion against Wells Fargo. To state a claim for unlawful conversion of money, a plaintiff must allege the "wrongful exercise of dominion or control over [the] property of another without authorization and to the exclusion of the owner's rights in that property." Chicago Title Ins. Co. v. Ellis, 409 N.J. Super. 444, 456 (App. Div. 2009). The Complaint alleges no facts whatsoever regarding how Wells Fargo

---

[2] Additionally, DeFazio's reliance on published news reports related to Wells Fargo's involvement in schemes which include opening fraudulent bank accounts and the creation of fake accounts is completely unavailing. See, generally, Sodini Cert., Ex. A-C. Apart from raising these matters outside of the pleadings, Plaintiff fails to plead any facts linking the wrongdoing at issue in these reports and the allegations of wrongdoing committed against Plaintiff by some third party in using the Wells Fargo Account to defraud Plaintiff.

13

exercised control over Plaintiff's funds, much less that such control was exercised wrongfully and without authorization. This claim is based on threadbare allegations that merely repeat the elements of the cause of action. It will be dismissed pursuant to Rule 12(b)(6), without leave to replead.

Finally, the Fourth Count of the Complaint asserts another negligence claim against Wells Fargo, seeking to hold the bank liable for the actions of its employees under a theory of respondeat superior. The allegedly wrongful conduct on which this claim is based is identical to the alleged misconduct on which the First Count is based. For the same reasons that the First Count fails to state a plausible negligence claim, this claim must likewise be dismissed.

### III.    BIRD DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

The Complaint asserts claims for breach of contract, legal malpractice and "negligent supervision/respondeat superior" against the Bird Defendants, based on their alleged failure to safeguard their computer network and email system. The Bird Defendants move to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(2), on the grounds that that they lack sufficient contacts with the state of New Jersey to support personal jurisdiction. On a Rule 12(b)(2) motion, the burden is on the plaintiff to "prove by affidavits or other competent evidence that jurisdiction is proper." Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009).

The Third Circuit has held that a federal district court sitting in diversity, "may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." Id. New Jersey's long-arm statute, N.J. Ct. R. 4:4-4, authorizes personal jurisdiction "as far as is permitted by the Fourteenth Amendment to the United States

14

Constitution." Decker v. Circus Hotel, 49 F. Supp. 2d 743, 746 (D.N.J. 1999); see also Avdel Corp. v. Mecure, 58 N.J. 264, 268 (1971) (holding that New Jersey's long-arm rule "permits service on nonresident defendants subject only to 'due process of law'"). The Fourteenth Amendment's due process clause "limits the power of a state court to render a valid personal judgment against a nonresident defendant." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980). It is well-established that a determination of whether due process permits a court to assert its power over a nonresident defendant must focus on "the defendant's relationship to the forum State." Bristol-Myers Squibb Co. v. Superior Ct. of Cal., 582 U.S. ---, 137 S. Ct. 1773, 1779 (2017).

In that regard, Supreme Court jurisprudence has recognized two types of personal jurisdiction, general ("all purpose") jurisdiction and specific ("case-linked") jurisdiction, which are distinct based on the nature and extent of the defendant's contacts with the forum. Id.; Goodyear Dunlop Tires Operations., S.A. v. Brown, 564 U.S. 915, 919 (2011). General jurisdiction applies when the defendant's "affiliations with the State are so 'continuous and systematic as to render them essentially at home in the forum state." Goodyear, 564 U.S. at 919 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 317 (1945)). Where general jurisdiction exists, the defendant's contacts with the state need not be related to the litigation, and, indeed, the forum court "may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different state." Bristol-Myers Squibb, 137 S. Ct. at 1780 (citing Goodyear, 564 U.S. at 919). Specific jurisdiction, in contrast, exists where the litigation arises out of or relates to the defendant's contacts with the forum. Id. This means that "there must be 'an affiliation between the forum and the underlying controversy, principally [an] activity or an

15

occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" Id. (quoting Goodyear, 564 U.S. at 919) (alteration in original). Where a court has specific jurisdiction, its authority is limited to adjudicating issues related to the very controversy on which that jurisdiction is based. Id.; see also Chavez v. Dole Food Co., Inc., 836 F.3d 205, 223 (3d Cir. 2016) (holding that courts may exercise specific jurisdiction over foreign defendants "when the cause of action arises from the defendant's forum related activities").

In their motion to dismiss, the Bird Defendants argue that Plaintiff cannot establish either general or specific jurisdiction over them in New Jersey. They point out that Bird and his law firm are citizens of South Carolina, maintain an office in South Carolina and represented DeFazio in connection with a real estate closing for property located in South Carolina. They further note that, according to the Complaint itself, DeFazio contacted them to retain the firm; in other words, there is no evidence that the Bird Defendants solicited business, and in particular DeFazio's business, in New Jersey. DeFazio "concedes that there is no general jurisdiction over either of the Bird Defendants in this matter" (Pl. Br. at 2). However, he maintains that there is specific jurisdiction in this forum because the Bird Defendants undertook the representation knowing that DeFazio resided in New Jersey and because they affirmatively initiated email communications directed to DeFazio in New Jersey. DeFazio adds that the Bird Defendants sent their retainer agreement to DeFazio, which he signed in New Jersey.

For specific personal jurisdiction to attach to an out-of-state defendant, the following three requirements must be met: (1) the defendant has 'purposefully directed' his activities at the forum; (2) the litigation arises out of or relates to those activities; and (3) the exercise of jurisdiction otherwise comports with fair play and substantial justice. Burger King Corp. v.

16

Rudzewicz, 471 U.S. 462, 472-73 (1985); O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007). The Supreme Court has consistently held that, to establish that a defendant has sufficient "minimum contacts" with a forum to support specific jurisdiction, "there must be an 'affiliation between the forum and the underlying controversy, principally [an] activity or occurrence that takes place in the forum State.'" Bristol-Myers Squibb Co., 137 S. Ct. at 1781 (quoting Goodyear, 564 U.S. at 919); see also Int'l Shoe, 326 U.S. at 316 (1945) (holding that, for a court to subject a defendant to personal jurisdiction, the defendant must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.") (quotation omitted). "Minimum contacts" has been defined as "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Asahi Metal Indus. Co., Ltd. v. Superior Court of California, 480 U.S. 102, 109 (1987) (quoting Burger King Corp., 471 U.S. at 475). In other words, for specific jurisdiction to exist, the non-resident defendant's "suit-related conduct must create a substantial connection with the forum State." Walden v. Fiore, 571 U.S. 277, 284 (2014).

DeFazio's effort to establish specific jurisdiction falls far short of the minimum contacts required by well-established jurisprudence. The only "suit-related conduct" linking the Bird Defendants and New Jersey is their communication with New Jersey resident DeFazio, which occurred primarily by email. There is no evidence that the Bird Defendants solicited clients in New Jersey, either in general or specifically targeted to the transaction underlying this suit. There is no evidence that any aspect of the underlying property sale transaction occurred in New Jersey. And there is no evidence that the Bird Defendants traveled to New Jersey to meet with

17

DeFazio in connection with their representation of DeFazio in the transaction. The fact that DeFazio received messages from the Bird Defendants in New Jersey and responded from that location does not, without more, establish a substantial connection with the state or demonstrate that the Bird Defendants purposefully availed themselves of the privileges and benefits of conducting business in New Jersey. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 n.3 (3d Cir. 1998) (noting that the weight of authority among courts of appeal holds that phone calls and letters between a defendant and a plaintiff in the forum state, without more, do not provide sufficient minimum contacts to satisfy due process); see also Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452 (3d Cir. 2003) (holding, where a defendant's web site was accessible in the forum state, that evidence of the defendant's intentional targeting of the site to the forum state to conduct business was required to satisfy the "purposeful availment" requirement of a minimum contacts analysis); cf. Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 149-50 (3d Cir. 1992) (finding that the defendant's attendance at a meeting with the plaintiff in New Jersey coupled with the telephone calls and letters to New Jersey sufficed to establish minimum contacts).

      The claims against the Bird Defendants involve South Carolina actors practicing law in South Carolina for the purpose of DeFazio's purchase of a South Carolina property. For the reasons set forth above, Plaintiff has failed to meet his burden of establishing that the Bird Defendants are subject to personal jurisdiction in New Jersey in connection with this lawsuit. Accordingly, all claims asserted in the Complaint against the Bird Defendants will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant Wells Fargo's motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), and will also grant the Bird Defendants' motion to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). An appropriate Order will be filed.

    s/ Stanley R. Chesler    
STANLEY R. CHESLER
United States District Judge

Dated: April 16, 2020